IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**THADDEUS L. JARVIS**                                                                      **PLAINTIFF**

v.                                                                              No. 3:20CV164-NBB-RP

**UNKNOWN VERGERA, ET AL.**                                                     **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Thaddeus Jarvis, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that Tallahatchie County Correctional Facility ("TCCF") staff issued him only one prison uniform; deprived him of a breakfast tray on one occasion; served food that was inconsistent with the scheduled menu on one occasion; did not provide a grievance form to him upon his verbal request on one occasion; and did not respond to grievances he submitted.

The defendants have moved for summary judgment; the plaintiff has responded to the motion, and the parties have submitted additional briefing.[1] The matter is ripe for resolution. For the reasons

---

[1] The court previously entered a memorandum opinion [58] and final judgment [59] in this case, granting the defendants' motion for summary judgment. The plaintiff moved [63], [64] to reconsider the decision, stating that he did not receive a copy of the summary judgment motion and thus had no opportunity to respond to it. The court granted the motions to reconsider, and the plaintiff's response and the additional briefing by the parties followed.

set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered in favor of the defendants in all respects.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[2]

Thaddeus Jarvis is a Mississippi Department of Corrections ("MDOC") inmate, who was formerly housed for a short time at the Tallahatchie County Correctional Facility ("TCCF"). *See generally* Complaint (Doc. No. 1). He is now incarcerated at the Marshall County Correctional Facility in Holly Springs, Mississippi. *Id.* Mr. Jarvis alleges that, between January 14, 2020, and April 11, 2020:

(1) TCCF Correctional Counselor Lewis issued only one prison uniform to him at intake, and Lewis deprived the plaintiff of a breakfast tray on January 14, 2020;

(2) TCCF Grievance Coordinator Walker did not process his grievance regarding the January 14, 2020, breakfast tray incident;

(3) TCCF Unit Manager Wynne, on March 4, 2020, allowed service of a lunch tray with food not listed on the scheduled menu, and when Mr. Jarvis requested a grievance form to complain about the tray, Wynne did not provide a grievance form to him; and

---

[2] For the purposes of this memorandum opinion, the court will assume the plaintiff's allegations are true. *See* Fed. R. Civ. P. 56.

(4) TCCF Assistant Warden Grant generally "failed to provide adequate staff" and "maintained policies [inadequately], failed to remedy unlawful conditions that have been made known to [wardens] and carry out responsibilities."

See Complaint, Doc. 1 at 5, 17-23.[3]

Mr. Jarvis claims that, through these acts, the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 3. He sues all defendants in both their individual and official capacities. *Id.* at 12-14. He seeks compensatory damages of $150,000 for "pain and suffering and harms that [are] impossible to measure;" nominal damages of $150,000 for "a clear showing" of constitutional violations; punitive damages in the amount of $150,000 for unconstitutional conditions and denial of due process; and costs. *Id.* at 5.

Mr. Jarvis submitted seven grievances between April 20, 2020, and May 5, 2020 – four involving claims in the instant suit – and three involving claims not part of the instant suit, as listed below.

**Grievance Filings Concerning Allegations Raised in the Complaint**

(1) **April 20, 2020, Grievance**

Plaintiff filed a Step 2 Formal Inmate Grievance complaining that Defendant Lewis failed to process or respond to his grievances, called him a "bitch," and wrongfully forced him to transfer to a different housing unit.

**Result:** Denied for failure to follow grievance procedure; Plaintiff directed to first file a Step 1 Informal Resolution.

(2) **April 27, 2020, Grievance**

Plaintiff filed a Step 1 Informal Resolution, attaching a handwritten "Grievance/Complaint" that asserted all allegations raised in this lawsuit.

---

[3] Mr. Jarvis also makes additional allegations against other defendants ("Unknown Vergera / Warden," "Unknown Wilkinson/Warden," "Unknown Kessler/Warden, and "Unknown Macky/Law Librarian"). However, he never served these defendants; as such, they are not properly before the court. Nonetheless, the court's ruling on the instant summary judgment motion applies to these defendants because, where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

**Result:** TCCF Grievance Coordinator Walker directed Plaintiff to attempt to resolve issues within the housing unit with his Unit Manager or other unit team member, and if still unresolved, directed Plaintiff to submit another Step 1 (Form 14-5A) grievance with specific actions requested.

**(3) May 1, 2020, Grievance**

Plaintiff filed a Step 2 Formal Inmate Grievance, asserting the same allegations as raised in the April 20 filing, and requesting that Lewis be fired.

**Result:** Before the deadline for staff response, Plaintiff filed an additional grievance, below.

**(4) May 4, 2020, Grievance**

Plaintiff filed an additional Step 2 Formal Inmate Grievance, asserting the same allegations as raised in the May 1 and April 20 filings, and requesting that Lewis be fired.

**Result:** Plaintiff was interviewed by the TCCF Grievance Coordinator walker in regard to his complaints. Ms. Walker advised Plaintiff that he was not correctly submitting his grievances by placing them into the grievance box. Ms. Walker also had the Unit Manager interview Plaintiff to ensure he was receiving correct meal trays, and Plaintiff confirmed that he is now receiving correct trays. Plaintiff executed the grievance document *to confirm that all issues had been resolved as of May 4, 2020.*

**Grievance Filings Concerning Allegations *Not* Raised in the Complaint**

**(5) May 4, 2020, Grievance**

Plaintiff filed a Step 1 Informal Resolution to grieve what he believed was unfair discipline after he was written up and charged a $50 fee for placing piece of a torn bed sheet in between his cell door locking device. The filing requested a response letter and reimbursement of the fee.

**Result:** Denied; TCCF Grievance Coordinator Walker advised Plaintiff that all grievances must be placed inside the grievance box and cannot be submitted by sliding under the door. Plaintiff executed the grievance document to confirm his agreement with the resolution of the matter.

**(6) May 5, 2020, Grievance**

Plaintiff filed an additional Step 1 Informal Resolution to grieve the unfair discipline described in the May 4 filing, and requesting a response letter and reimbursement of the fee.

**Result:** Denied; TCCF Grievance Coordinator Walker advised that the issues asserted were not proper in a general grievance, provided a copy of the grievance procedure, and highlighted the appropriate procedure for Plaintiff to follow.

**(7) May 5, 2020, Grievance**

Plaintiff filed a TCCF Disciplinary Appeal Form, asserting the same allegations as the May 4 and May 5 grievance filings.

**Result:** No documents submitted by the parties regarding the result of the Disciplinary Appeal.

## Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81,

89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

To the extent Mr. Jarvis alleges that he failed to exhaust administrative remedies because his grievances were not accepted or processed by TCCF staff, this argument must be rejected based on the evidence. The PLRA provides one exception to the exhaustion requirement: Inmates are not required to exhaust remedies that are not "available." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (citing 42 U.S.C. § 1997e(a)). A remedy is not available where "prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Brantner v. Freestone Cty. Sheriff's Office*, 776 F. App'x 829, 833 (5th Cir. 2019) (quoting *Ross*, 136 S. Ct. at 1859-60)). At the summary judgment stage where the defendant establishes that an inmate plaintiff has failed to exhaust, the plaintiff may not merely allege in response that the administrative remedy was "not available." *Ocampo-Vergaro v. Clark*, 2012 WL 3674084, at *2 (S.D. Miss. Aug. 2, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Instead, the inmate must present specific facts, such as the prison employee's name, the forms requested, the date requested, and evidence detailing the prison employee's response or denial to demonstrate that the remedy was indeed "not available." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)).

In this case, Mr. Jarvis successfully filed *seven* grievances in about two weeks. *See* Walker Dec. (Motion Ex. A) at ¶ 8. Of those, when he failed to submit grievances properly, TCCF staff explained how to re-submit the grievance, providing a copy of the grievance procedure – even highlighting provisions Mr. Jarvis had not followed. *See, i.e., id.* at Ex. 2 (Plaintiff's Grievances) at 19, 39, 45. Two TCCF staff members interviewed Mr. Jarvis regarding his grievances relevant to this suit – and quickly resolved those issues to his satisfaction. *Id.* at 37. Mr. Jarvis has not shown that any TCCF staff member attempted to "thwart" his grievance submissions "through machination, misrepresentation, or intimidation." *Brantner*, 776 F. App'x at 833.

Further, Mississippi district courts have "routinely rejected prisoners' arguments of unavailability of administrative remedies" when there is evidence that the prisoners were able to file *other* grievances but had simply failed to exhaust *relevant* grievances. *See Ocampo-Vergaro*, 2012 WL 3674084, at *3 (citing

*Ramirez v. Bureau of Prisons*, No. 3:16-cv-626-HTW-LRA, 2017 WL 3135934, *3 (S.D. Miss. May 31, 2017) (rejecting unavailability exception where evidence reflected plaintiff had filed many other grievances while in custody); *Banks v. Pearson*, No. 5:09-cv-148-DCB-MTP, 2010 WL 2817180 (S.D. Miss. Mar. 22, 2010) (same)). *See also Wilson v. Wilkinson County Corr. Facility*, No. 5:17CV96-KS-MTP, 2018 WL 1476113, at *3 (S.D. Miss. Feb. 28, 2018) (dismissing for failure to exhaust where plaintiff was able to file a grievance, but did not exhaust; prisoner did not demonstrate unavailability of administrative review); *Morris v. Walker*, No. 5:16-cv-122-DCB-MTP, 2018 WL 4677874, at *3 (S.D. Miss. April 24, 2018) (same); *Putnam v. Traylor*, 633 F. App'x 600 (5th Cir. 2016) (dismissal based on failure to exhaust when prisoner obtained grievance forms for other purposes).

The administrative remedies procedure was available to Mr. Jarvis; indeed, he used it seven times to file grievances – including four grievances relevant to this case. He nonetheless failed to *complete* the grievance process for any of his claims before filing the instant suit. The instant case will thus be dismissed for failure to exhaust administrative remedies. As discussed below, in the alternative, the case will be dismissed on the merits.

*Supervisor Liability*

The plaintiff's claims against Unit Manager Wynne, Assistant Warden Grant, and Warden Vergara is their roles as supervisors must be dismissed for failure to state a claim upon which relief could be granted. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's

participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy[4] that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, the plaintiff does not allege that these defendants had any personal involvement or were causally connected to the incident; hence, these allegations fail to state a constitutional question. As such, the defendants' motion for summary judgment will be granted, and judgment will be entered in favor of defendants Wynne, Grant, and Vergara as to the plaintiff's allegations regarding supervisor liability.

### Verbal Abuse

The plaintiff's claims against Ms. Mackey for verbal abuse must also be dismissed because verbal abuse by prison staff does not give rise to a cause of action under § 1983. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997). Judgment will be entered in favor of Ms. Mackey as to this claim.

### Problems with the Grievance Process

Mr. Jarvis complains that Grievance Coordinator Walker failed to process his grievance

---

[4] Mr. Jarvis alleged that the "Wardens and Assistant Wardens … maintained policies [inadequately]." Doc. 1 at 5. He did not, however, identify the policies or how inadequate maintenance of those policies led to his alleged deprivations. Conclusory allegations such as these do not state a valid civil rights claim. *See Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).

regarding the inadequate breakfast tray. He also complains that Unit Manager Wynne did not provide a grievance form so he could seek redress for the March 4, 2020, lunch menu incident. A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). For this reason, the plaintiff's claim against defendants Walker and Wynne for failure to assist with the grievance process must be dismissed for failure to state a claim upon which relief could be granted.

### General Conditions of Confinement
### (Inadequate Food and Clothing)

Mr. Jarvis alleges that he received only one prison uniform, which he had to wear for a month without laundering. He also alleges that on January 14, 2020, he did not receive a breakfast tray – and that on March 4, 2020, he received a lunch tray with inadequate portions. Doc. 1 at 17, 19. "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n. 10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

The plaintiff's allegation that he missed a single meal on one day, and received inadequate portions of a meal two months later caused him, at most, "discomfort or inconvenience" and thus fails to state a constitutional claim. *Wilson, supra*. Likewise, Mr. Jarvis' allegation regarding having to wear the same uniform for thirty days fails to state a constitutional question. Requiring inmates to wash their personal articles of clothing with bar soap does not violate the Eighth Amendment.

*Gates v. Cook,* 376 F.3d 323, 342 (5th Cir. 2004). Mr. Jarvis has not alleged that bar soap was not available in his cell[5]; as such, it appears that he could have washed his clothes by hand had he chosen to do so. In addition, having only one change of clothes over a *two*-month period (a longer time than Mr. Jarvis alleges in the present case) does not rise to the level of an Eighth Amendment violation. *See Gibson v. Lynch,* 652 F.2d 348, 352 (3d Cir.1981) (an inmate's complaints about having only one change of clothes and no laundry service for two months did not state an Eighth Amendment claim); *accord Lancaster v. Tilton,* 2008 WL 449844 at 18 (N.D. Cal. 2008).

Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time, *Woods*, 51 F.3d at 581, and the defendants are entitled to summary judgment as to these claims.

### *Spears* Hearing Is Not Required

Most of the issues the plaintiff raises in his response to the summary judgment motion and additional briefing merely recast his previous arguments in slightly different terms – or have already been discussed in the instant memorandum opinion. He does, however, raise a new issue: That the court denied him due process by declining to hold a hearing under *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).[6] The *Spears* decision permits a district court to hold a hearing early in the proceedings to give *pro se* plaintiffs the opportunity to flesh out their claims, as *pro se* litigants often have difficulty

---

[5] MDOC inmates temporarily transferred to Tallahatchie County Correctional Facility in early 2020 each received, among many other things, soap (and other items as needed or requested.) *See generally* Declaration of TCCF Property and Intake Lieutenant Alice Brown, attached as Exhibit B to the defendants' motion for summary judgment.

[6] This claim fails at a fundamental level, as the defendants played no part in the decision not to hold a *Spears* hearing. As such, these allegations fail to state a claim against the defendants.

setting forth their legal positions on paper. *Id*. The hearing also provides courts the chance to screen the plaintiff's allegations to dispose of those that are frivolous or fail to state a valid legal claim. *Id*. It is not mandatory, however, and courts may forego such a hearing if a *pro se* litigant's complaint clearly sets out his legal positions. A plaintiff has no "due process" right to this pre-suit screening of his claims. *See Spears, supra* (explaining a magistrate judge "properly *may* be asked" by district court to investigate potential frivolity of prisoner's complaint under 28 U.S.C.A. § 1915); *see also Cardenas v. Young*, 655 Fed. App'x 183 (5th Cir. 2016) (plaintiff's "assertion that the district court violated his due process rights by failing to hold a *Spears* hearing is without merit") (citing *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986)). In this case, the plaintiff's allegations were clear, and there was no need for a *Spears* hearing. This claim is without substantive merit.

### Pending Motions Dismissed

Three other motions remain pending:

[86] – Plaintiff's Motion to Hold Appeal in Abeyance;

[89] – Plaintiff's Motion to Amend Complaint; and

[91] – Defendants' Motion to Extend the Deadline to Respond to the Plaintiff's Motion to Amend Complaint.

The court will discuss these in turn. First, as this court does not have the authority to hold an appeal in abeyance, the plaintiff's motion [86] seeking that relief will be dismissed for want of subject matter jurisdiction.

Second, as this case is years old – and the defendants have filed a responsive pleading – the plaintiff's motion [89] to amend his complaint will be denied. When a plaintiff seeks to amend his complaint after the deadline to do so has expired, courts use a four-part test: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W*

*Enterprises, L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir.2003) (quotation marks, citation, and brackets omitted). The plaintiff has not explained why he did not seek to amend his complaint before the deadline; thus, he does not meet the first requirement. Further, the proposed amended complaint seeks to add as defendants executives from the corporation which operates TCCF – and does not explain how they might be personally involved in the allegations of the complaint. As discussed above, failure to allege a defendant's personal involvement precludes claims against that defendant. Hence, the plaintiff has not met the second part of the test. Considering the age of this case, the expiration of discovery deadlines, and the effort put into defending the matter (including seeking summary judgment), the defendants would suffer prejudice if the court granted the plaintiff's motion to amend. The plaintiff has thus not met the third part of the test. In addition, given the ample opportunity the plaintiff has enjoyed to develop his claims (and the weakness of the new allegations, despite that opportunity), the court will not consider a continuance of this matter. The plaintiff's motion [89] to amend his complaint will be denied.

Finally, the defendants have already responded to the plaintiff's motion to amend his complaint; the court has considered the response and has now denied the request to amend. As such, the defendants' motion [91] to extend the deadline to respond to the plaintiff's motion to amend will be dismissed as moot.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment will be granted, and judgment will be entered for the defendants in all respects. All of the plaintiff's allegations will be dismissed for failure to state a claim upon which relief could be granted, and, in the alternative, for failure to exhaust administrative remedies. Further, the plaintiff's motion [86] to hold the appeal in abeyance will be dismissed as moot, and his motion [89] to amend his complaint will be denied. Finally, the defendants' motion [91] to extend the deadline to respond to the plaintiff's motion to amend will be dismissed as moot.

A final judgment in accordance with this memorandum opinion will issue today.

**SO ORDERED**, this, the 6th day of March, 2023.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE